**ACOMP**
**LAGOMARSINO LAW**
ANDRE M. LAGOMARSINO, ESQ.
Nevada Bar No. 6711
TAYLOR N. JORGENSEN, ESQ.
Nevada Bar No. 16259
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
AML@lagomarsinolaw.com
Cory@lagomarsinolaw.com
*Attorneys for Plaintiff Justyn Hornor*

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| JUSTYN HORNOR, individually, | CASE NO.:    2:22-CV-01840-RFB-DJA |
| Plaintiff, | **FIRST AMENDED COMPLAINT AND JURY DEMAND** |
| vs. | **ARBITRATION EXEMPTION CLAIMED DUE TO AMOUNT IN CONTROVERSY** |
| BRANDON WEY aka BRANDON WADE, individually; REFLEX MEDIA, INC, a Nevada Corporation; ROE ENTITIES I – V, inclusive, | Hon. Richard F. Boulware II |
| Defendants. | |

Plaintiff JUSTYN HORNOR, by and through his counsel of record, ANDRE M. LAGOMARSINO, ESQ. and TAYLOR N. JORGENSEN, ESQ. of LAGOMARSINO LAW, files the following *First Amended Complaint and Jury Demand*, alleging and complaining as follows:

### JURISDICTION AND VENUE

1. This court has jurisdiction over the FMLA and ADA claims under 29 U.S.C.A. § 2617 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). The Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

2. Pursuant to Article 6, Section 6 of the Nevada Constitution, the District Courts have original jurisdiction over all cases excluded by law from the original jurisdiction of the Justice Courts. In the instant matter, Plaintiffs allege damages in excess of $15,000, and the Justice Court does not have original jurisdiction.

3. Personal jurisdiction and venue are appropriate in this Court since Defendants conduct their

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy, #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

affairs in this district, and the unlawful conduct complained of herein occurred in this district.

4.      All procedural prerequisites for filing this suit have been met. Plaintiff JUSTYN HORNOR (hereinafter "HORNOR" or "Plaintiff") timely filed a Charge of Discrimination alleging discrimination and retaliation against Defendants with the Equal Opportunity Rights Commission ("EEOC"). The EEOC issued a Right to Sue on July 27, 2022. This Complaint and Jury Demand is being filed within ninety (90) days of Plaintiff's receipt of that Notice of Right to Sue.

## IDENTIFICATION OF PARTIES

5.      At all relevant times, HORNOR was, and is, a resident of Clark County, Nevada.

6.      Upon information and belief, Defendant BRANDON WEY (hereinafter "WEY") was, and is, a resident of Clark County, Nevada. WEY also uses the alia BRANDON WADE commercially.

7.      At all relevant times, Defendant REFLEX MEDIA, INC. (hereinafter "REFLEX") was, and is, a domestic corporation, organized and existing by virtue of the laws of the State of Nevada and doing business in Clark County, Nevada.

8.      At all relevant times, HORNOR was an "employee," as defined by United States and Nevada law, as related to the causes of action set forth herein.

9.      At all relevant times, HORNOR was employed by and between Defendants.

10.     At all relevant times, Defendants were HORNOR'S "employer," as defined by United States and Nevada law, as related to the causes of action set forth herein.

11.     At all relevant times, REFLEX was a covered entity, as defined by the United States and Nevada law, as related to the causes of action set forth herein.

12.     Upon information and belief, REFLEX employed fifteen (15) or more employees during all the relevant time periods, and therefore is, and has been, an "employer" as defined by United States and Nevada law during all the relevant time periods.

## GENERAL ALLEGATIONS

13.     Plaintiff incorporates and realleges Paragraphs 1 through 12 of this Complaint as though fully set forth herein.

14.     Plaintiff began working for Defendants in or about March 2020 as the "Head of Product."

15.     Shortly after Plaintiff was hired, REFLEX's Head of Human Resources ("HR") went on

maternity leave. WEY, who upon information and belief was REFLEX'S CEO until June 2022, asked administrative staff with no formal HR training to tentatively fill the HR role.

16.    Within a few months of his hire, HORNOR was welcomed onto REFLEX'S Executive Committee by WEY.

17.    Upon information and belief, the Executive Committee at the time HORNOR was added consisted of WEY; Ting, WEY'S sister; Mark Smith, WEY'S attorney and close friend; Ruben Buell, HORNOR'S supervisor; Meg Bruno, REFLEX'S Vice President of Marketing; and HORNOR.

18.    Throughout 2020, HORNOR received positive internal reviews and was quickly promoted to "Director of Product" and then to "Vice President of Product."

19.    In or about March 2021, WEY told HORNOR that he would be promoted to "Chief Product Officer" (CPO) and presented a draft for HORNOR's review.

20.    In or about the beginning of 2021, WEY began a destructive cycle of adopting various religious beliefs and forcing them onto his employees.

21.    In or about the beginning of 2021, WEY pressured HORNOR, HORNOR's wife, and several other REFLEX executives to join him on a weeklong spiritual retreat hosted by Dr. Joe Dispenza or to attend these events individually.

22.    HORNOR felt compelled to go to these retreats by his fear of losing his job.

23.    In or about mid-2021, WEY brought Dr. Dispenza's team to REFLEX's office to give an office-wide presentation on "spiritual" subjects. Numerous employees at both leadership and staff levels complained about the spiritual aspects of this presentation.

24.    On Dr. Dispenza's own website, he states "Our community is made up of doers, people who want to be challenged **to do the uncommon, the supernatural, and the mystical."** [1]

25.    One of Dr. Dispenza's largest selling points for his teachings focuses on the testimonials of individuals who healed their illness with meditation, including several instances of cancer.[2]

---

[1] https://drjoedispenza.com/pages/about-us

[2] https://drjoedispenza.com/pages/stories-of-transformation

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

26.    Instead of addressing the complaints, WEY made note of who spoke out and would later retaliate against them by questioning their loyalty to the company and treating them unfavorably.

27.    WEY continued forcing Dr. Dispenza's teachings onto HORNOR and other REFLEX employees until WEY and Dr. Dispenza's team had a falling-out.

28.    WEY then created his own set of philosophies, which shared several concepts with Dr. Dispenza's teachings, which he nicknamed the "Ego-Free Enterprise." WEY told employees that these "Ego-Free" philosophies were the core and foundation of REFLEX's culture and began forcing those philosophies onto HORNOR and REFLEX's other employees in various ways.

29.    For example, shortly thereafter, WEY began hijacking REFLEX's weekly, hour-long "LV Touchbase" business meetings, which were intended for the distribution of information to all domestic and international staff.

30.    Instead of keeping the meetings about REFLEX's business matters, WEY took advantage of his captive audience and began preaching about his religious "Ego-Free Enterprise" philosophies, urging his employees to integrate the philosophies into their work and personal lives.

31.    During these meetings, WEY would discuss a variety of religious, sexually explicit, and otherwise inappropriate topics, including WEY's experiences with masturbation, some of his personal sexual exploits, sexual and romantic power dynamics, and deep personal traumas. Meetings would include meditation, dancing, preaching, and in-depth PowerPoint presentations about WEY's religious beliefs.

32.    During and in preparation for these meetings, WEY frequently pressured HORNOR and other employees to answer intrusive questions and share their own personal, traumatic, and/or sexual experiences with the entire audience.

33.    WEY pressured HORNOR and other employees to do this because, as part of his religion, WEY believed that individuals had to openly work through trauma in order to access their higher selves. WEY coded the concept of "higher self" with "ego-free" self.

34.    Employees who were not "ego-free" were seen as disloyal, and WEY openly questioned their place at REFLEX.

35.     Additionally, WEY often invited people from outside the company to watch these meetings, which added to the employees' intense distress. Upon information and belief, WEY also recorded and distributed these meetings to outside parties.

36.     These meetings spurred many complaints from HORNOR and other employees. However, because REFLEX lacked an adequate HR department at the time, employees had no sufficient recourse or safe place to address their grievances beyond WEY's control.

37.     Complaints were largely directed to Mark Smith ("Mr. Smith"), REFLEX's counsel and WEY's close friend. These grievances generally made their way to WEY, who would retaliate against these employees for making confidential complaints to Mr. Smith.

38.     On occasion, HORNOR and other employees tried to relay their concerns and complaints, as well as those of the general REFLEX workforce, directly to WEY.

39.     WEY refused to acknowledge the seriousness of his actions or the effects his religious prerogative had on his employees. Instead, WEY added additional meetings to the company's calendar to share his teachings.

40.     When employees asked to be excluded from these disturbing and intrusive company-wide meetings, WEY announced that attendance would be recorded, and further criticized employees for not attending.

41.     During one of these meetings, WEY went as far as to tell HORNOR and the other REFLEX employees in attendance that the extreme emotional effects of requiring them to openly share trauma was a "blessing."

42.     During this same meeting, then-employee Cheyne Cole repeatedly asked WEY to stop characterizing these deeply triggering experiences as blessings. When WEY continued to push his religious dogma, Mr. Cole stormed out.

43.     On or about November 11, 2021, WEY went as far as to hold a mandatory "Ego Free Framework" workshop during a local COVID-19 outbreak. Employees who did not attend were required to watch a recording of the event. Several employees who attended in person fell sick following the workshop.

44.     Throughout 2021, WEY continued to hold large forums wherein REFLEX employees were

forced to share deep traumas in a group setting. Employees were asked highly intrusive questions about their sex lives, marriages, relationships, traumas, and other personal topics. WEY asked HORNOR specifically about his marriage and frequently suggested that HORNOR was not in a state of true love. This continued throughout HORNOR's tenure.

45.    WEY reprimanded employees who failed to respond to his questions and publicized these failures within REFLEX either live in meetings or in company-wide emails.

46.    Based on information and belief, WEY recorded numerous meetings and ceremonies involving inappropriate or sensitive content discussed by WEY and employees. He then distributed these recordings internally throughout REFLEX, as well as to people outside the company. He did so despite knowing of the serious privacy and safety concerns of his employees who were featured in those recordings.

47.    On numerous occasions, WEY privately demanded that HORNOR provide written responses to personal, intrusive questions, and used HORNOR's responses to those questions to undermine HORNOR's position in REFLEX. Based on information and belief, similar incidents occurred between WEY and other employees.

48.    WEY further pressured HORNOR to disclose information regarding the mental health treatment he had been receiving as a direct result of the anxiety and emotional distress that WEY's conduct caused.

49.    WEY's manipulative conduct towards HORNOR, in both public and private settings, was humiliating and caused him significant emotional distress which manifested in an extremely severe flare-up of HORNOR's ulcerative colitis.

50.    HORNOR and other employees felt pressure to concede to WEY's demand in order to be considered a part of the company culture and to keep their jobs.

51.    The emotional distress that this conduct caused was crippling. In fact, during one of WEY's ceremonies involving trauma, an employee was brought to tears and asked WEY to stop multiple times before storming out of the ceremony, causing safety concerns amongst HORNOR and other employees.

52.    Adding to the extreme distress that HORNOR and other employees were experiencing,

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy. #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

WEY assigned his girlfriend, Dana Rosewall, to conduct frequent "aura readings" of HORNOR and other employees.

53.    Dana would indicate "the color of aura" she saw around each employee and use that to determine the employee's commitment to WEY, his teachings, and/or the company culture. WEY then used these aura readings to make crucial decisions regarding employees, causing anxiety and distrust in WEY's management decisions.

54.    Additionally, in mid-2021, WEY gave Dana and Devin Rosewall complete autonomy to review REFLEX's Marketing Team's Creative Department, despite their lack of qualifications for such a task. Dana conducted "aura readings" and both sisters performed intrusive, unprofessional interviews on whomever they chose.

55.    During their "review," the sisters recommended firing a competent director, James Russell, who they never even interviewed. Based solely on that unqualified recommendation, WEY decided to fire the director. He only withdrew his decision after several other employees intervened. This incident caused further apprehension and deeper doubts about WEY's management.

56.    Throughout the entirety of these events, REFLEX still lacked an HR Department. HORNOR and other employees had to choose between WEY's religious reign and their jobs.

57.    REFLEX finally hired Heather Pressley as the Director of Human Resources in late 2021.

58.    Heather Pressley was dismissed within approximately two months of being hired for attempting to address the numerous and ongoing complaints against WEY. After her termination, WEY continued his religious instruction without interference.

59.    As a part of his ongoing religious instruction, WEY and/or his associates also frequently distributed and pressured employees to take illegal drugs including, but not limited to, MDMA, psilocybin, DMT, and amphetamines. WEY also frequently spoke with and pressured both HORNOR and fellow employee Ulysses Diaz to change their titles in the company to "Guide," in line with the religious beliefs and practices WEY was attempting to push onto employees.

60.    WEY, WEY's then-girlfriend Dana Rosewall, and Dana Rosewall's sister Devin Rosewall distributed those drugs to employees.

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy. #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

61.    WEY assessed each employee's willingness to take the drugs. Employees who were most willing to take those drugs were considered loyal to WEY and REFLEX and received preferential treatment, including being invited to special events held by WEY to consume more drugs.

62.    For example, during the 2021 Electric Daisy Carnival in Las Vegas, Nevada, WEY invited and pressured HORNOR and a group of employees and friends to take MDMA with him. Knowing WEY was judging him based on his participation, HORNOR acquiesced. As a result, HORNOR and other attendees suffered emotional disturbances and experienced extreme physical symptoms of intoxication and withdrawal.

63.    In another instance in 2021, Devin Rosewall distributed a potent unidentified amphetamine to HORNOR and other employees during work hours. HORNOR refused the drug, but several employees consumed it, one of whom had an extremely adverse reaction.

64.    Concerned for the safety of himself and his colleagues, HORNOR complained to his supervisor (Ruben Buell) and Mr. Smith of Devin Rosewall's actions.

65.    **WEY reprimanded HORNOR for not covering up the situation and demanded HORNOR apologize to Devin Rosewall**.

66.    When HORNOR refused, WEY began questioning HORNOR's executive decision-making abilities in retaliation.

67.    In December 2021, HORNOR pleaded with Mr. Smith to speak with WEY about the ongoing complaints. Mr. Smith indicated agreement with the need for change.

68.    Nothing came from this conversation, as WEY continued his religious teachings. This caused extreme distress, and many employees had to take time off for their mental health. Other employees quit due to the extreme stress being created by WEY.

69.    These effects did not go unnoticed. On or about January 27, 2022, WEY held a recorded religious ceremony outlining WEY's ideas of love. During the ceremony, WEY led a meditation, telling his employees and guests from outside the company to "focus on how the **universe** understands you. **It knows** what you've been through in your life, **it knows** the challenges you've been facing, it knows the pain you have suffered, it knows because you are a part of it. **It knows** all your experiences." Later, WEY stated that "you **pray** for someone. Or in the case of meditation

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy, #241, Henderson, Nevada 89052
Telephone: (702) 383-2864  Facsimile: (702) 383-0065

practices, we meditate, and **we perform healings of people**. And all we do is, we just close our eyes, we connect with that person by looking at their photo, we don't even need to know why they're sick or why they're ill. We simply just calm our minds, focus on our hearts, and feel pure love", and "when you look at light, high energy light is gamma rays. What happens when you have high energy light is you have a very high frequency. What happens to the body when Gamma rays hit you? You get cancer. But you know what? <u>**The only reason you get cancer is because your body isn't yet in the state of love, because when you are in the state of love, trust me, you'll be able to handle all those gamma rays.**</u> Um, and that's the problem with cancer today right, like we are all harboring all these negativities. And so we are not able to absorb the positive frequency from the universe. That's high vibration, that's positivity, um so the more you practice this then every cell in your body begins to open up to receive this new type of love." The following day, a senior executive shared concerns with HORNOR and other staff of their fear of office violence due to WEY's ceremony.

70.     Amidst the chaos, WEY also fostered distrust between individual employees. Throughout HORNOR's employment at REFLEX, WEY had a pattern of making false and defamatory statements and rumors regarding company executives to other executives and non-executive employees absent their presence.

71.     Based on information and belief, WEY made several such disclosures regarding HORNOR to other employees to undermine HORNOR's position in REFLEX.

72.     HORNOR learned of one such instance from Shawn Green. WEY told Green that HORNOR made threats against him and implied that the threats were physical in nature.

73.     On several occasions, WEY started rumors about employees and blamed HORNOR and others for creating and spreading those rumors.

74.     Throughout 2021, on multiple occasions, HORNOR asked WEY about his pending promotion to CPO. WEY made excuses regarding the paperwork and instead challenged HORNOR's commitment to WEY's religious views.

75.     Throughout 2021, WEY used the pending promotion to coerce HORNOR to adhere to WEY's religion.

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy. #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

76.     In or about December of 2021, almost nine months after WEY originally told HORNOR about his promotion to CPO, HORNOR received the paperwork for the position. Even then, WEY continued to use the position to coerce HORNOR into following WEY's religion.

77.     On or about January 29, 2022, WEY sent HORNOR a series of texts, pressuring HORNOR to take DMT with WEY as his "guide."

78.     On or about January 30, 2022, WEY sent HORNOR a disturbing email, in which he told HORNOR he did not trust him, that HORNOR needed to follow WEY's teachings, and that HORNOR was not ready for the CPO role.

79.     WEY insisted that HORNOR needed to dig into his psyche and resolve deep personal issues by following WEY's teachings in order to be prepared for the CPO role.

80.     On or about January 31, 2022, HORNOR requested medical leave from REFLEX to take care of his mental and physical health. HORNOR was overwhelmed with anxiety and began suffering various stress-induced psychological and physical symptoms and ailments.

81.     These ailments included an intense flare-up of HORNOR's ulcerative colitis, for which he is still receiving treatment. Sparing the intimate details, HORNOR's flare up rose to life-threatening levels.

82.     On or about February 1, 2022, HORNOR met with his therapist, who indicated HORNOR's declining mental and physical health was directly related to WEY's conduct and REFLEX's work environment.

83.     The totality of the hostile and stressful work environment WEY created by imposing his religious beliefs created an environment where it was impossible for HORNOR to perform his job in an effective and efficient way as a direct result of the physical, mental, and emotional decline that HORNOR experienced.

84.     Further, the arbitrary expectations, rooted in WEY's religious beliefs, made it difficult for HORNOR to exist outside of constant survival mode while employed by REFLEX.

85.     On February 2, 2022, HORNOR inquired with then-VP of Finance, Teresa Lemon, about taking FMLA leave to treat his declining health away from the hostile environment WEY created.

86.     Lemon directed HORNOR to Latasha Davis. On February 3, 2022, HORNOR spoke with

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

1    Latasha Davis about taking FMLA leave. During this conversation, Davis confirmed that

2    HORNOR had access to both FMLA and short-term disability benefits.

3    87.    On February 4, 2022, Davis asked HORNOR how much FMLA time he needed to take.

4    HORNOR informed her that he would need two to three weeks, but that he would have a better

5    idea once he spoke to his healthcare provider.

6    88.    On February 5, 2022, Davis sent HORNOR an email asking for more information

7    regarding his FMLA leave. HORNOR did not see this email until after hours, and intended to

8    respond to her during work hours the following day. Unfortunately, HORNOR did not get the

9    chance to do so before he was terminated.

10    89.    In an around the week of February 1 – February 5, WEY scheduled a meeting with

11    HORNOR to discuss the reasons that HORNOR was working with Human Resources to establish

12    leave. WEY was aware that HORNOR was speaking with Human Resources. WEY cancelled this

13    meeting leading up to February 8, 2022.

14    90.    On or about February 8, 2022, HORNOR emailed REFLEX a letter, which included a list

15    of accommodations required for HORNOR to return to work. These accommodations included, but

16    were not limited to, stopping religious ceremonies at the company, stopping pressure to take drugs,

17    and stopping pressure to share about personal matters such as relationships and trauma.

18    91.    **Minutes** after sending this letter, HORNOR was terminated from REFLEX. HORNOR

19    was cut off from REFLEX's company email, internal communication systems, and other mission

20    critical systems. Later that morning, HORNOR's supervisor called him to discuss parting ways.

21    92.    HORNOR's termination also came mere days after sharing concerns about his mental

22    health and speaking about taking FMLA leave with Davis.

23    93.    On or about February 9, 2022, HORNOR received his final paycheck from REFLEX.

24    **FIRST CLAIM FOR RELIEF**

25    **Religious Discrimination in Violation of Title VII of the 1964 Civil Rights Act,**

26    **42 U.S.C. § 2000e *et seq.* ("Title VII")**

27    *HORNOR Against Defendants REFLEX and ROE CORPs*

28    94.    Plaintiff incorporates and realleges Paragraphs 1 through 93 of this Complaint as though

fully set forth herein.

95.    HORNOR was subjected to religious discrimination, specifically reverse religious discrimination, when HORNOR was treated unfairly for not sharing the religious beliefs of those in charge at REFLEX, namely WEY.

96.    As an agnostic, HORNOR is a member of a class of persons protected by Title VII, which prohibits discrimination based on religion.

97.    During all relevant times, HORNOR performed according to REFLEX's legitimate expectations, evidenced by his positive feedback from peers and recent promotion to CPO.

98.    HORNOR openly resisted participation in and spoke out against WEY's religion and his attempt to impose it on REFLEX employees directly to WEY, Ruben Buell, Mark Smith, and other key executives..

99.    HORNOR suffered multiple adverse employment reactions due to his failure to comply with WEY's religion.

100.    HORNOR was subjected to an adverse employment action when WEY refused to officialize HORNOR's promotion to CPO for almost 9 months.

101.    Whenever HORNOR brought up the topic of his promotion, WEY redirected the conversation and would question HORNOR's loyalty and why he was not "all in" on WEY's religion.

102.    HORNOR later sent REFLEX and its agents a letter requesting religious accommodations, which included requests to stop pressuring employees to abide by WEY's religion.

103.    HORNOR was terminated within minutes of sending his requests for religious accommodations.

104.    The conduct as set forth above constitutes violations of Title VII. Defendants, through their agents and employees, subjected HORNOR to unlawful harassment as prohibited by Title VII.

105.    At all times relevant to HORNOR's allegations herein, WEY was acting within the course and scope of his employment as CEO of REFLEX.

106.    REFLEX is therefore liable for WEY's discriminatory acts and omissions.

107.    As a direct and proximate result of Defendants' conduct, HORNOR has suffered, and

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy. #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

continues to suffer, irreparable injury and monetary damages in the form of past, present, and future lost earnings and other benefits; great emotional distress, bodily harm, pain and suffering; and other related damages, some or all of which may be permanent and/or disabling in nature.

108.   Defendants' conduct was willful, intentional, oppressive, malicious, and done with wanton and reckless disregard for HORNOR's rights, thereby warranting the imposition of punitive damages to be determined at trial.

109.   As a result of Defendants' conduct, HORNOR has been required to retain the services of an attorney and, as a direct and foreseeable result, has been damaged and is entitled to reasonable attorney's fees and costs.

### SECOND CLAIM FOR RELIEF

**Religious Discrimination in Violation of NRS 613.330**

*HORNOR Against Defendants REFLEX and ROE CORPs*

110.   Plaintiff incorporates and realleges Paragraphs 1 through 109 of this Complaint as though fully set forth herein.

111.   HORNOR was subjected to religious discrimination, specifically reverse religious discrimination, when HORNOR was treated unfairly for not sharing the religious beliefs of those in charge at REFLEX, namely WEY.

112.   As an agnostic, HORNOR is a member of a class of persons protected by NRS 613.330, which prohibits discrimination based on religion.

113.   During all relevant times, HORNOR performed according to REFLEX's legitimate expectations, evidenced by his positive feedback from peers and recent promotion to CPO.

114.   HORNOR openly resisted participation in and spoke out against WEY's religion and his attempt to impose it on REFLEX employees directly to WEY, Ruben Buell, Mark Smith, and other key executives.

115.   HORNOR suffered multiple adverse employment actions due to his failure to comply with WEY's religion.

116.   HORNOR was subjected to an adverse employment action when WEY refused to officialize HORNOR's promotion to CPO for almost 9 months.

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy. #241, Henderson, Nevada 89052
Telephone: (702) 383-2864   Facsimile: (702) 383-0065

117.    Whenever HORNOR brought up the topic of his promotion, WEY redirected the conversation and would question HORNOR's loyalty and why he was not "all in" on WEY's religion.

118.    HORNOR later sent REFLEX and its agents a letter requesting religious accommodations, which included requests to stop pressuring employees to abide by WEY's religion.

119.    HORNOR was terminated within minutes of sending his requests for religious accommodations.

120.    The conduct as set forth above constitutes violations of NRS 613.330. Defendants, through their agents and employees, subjected HORNOR to unlawful harassment as prohibited by NRS 613.330.

121.    At all times relevant to HORNOR's allegations herein, WEY was acting within the course and scope of his employment as CEO of REFLEX.

122.    REFLEX is therefore liable for WEY's discriminatory acts and omissions.

123.    As a direct and proximate result of Defendants' conduct, HORNOR has suffered, and continues to suffer, irreparable injury and monetary damages in the form of past, present, and future lost earnings and other benefits; great emotional distress, bodily harm, pain and suffering; and other related damages, some or all of which may be permanent and/or disabling in nature.

124.    Defendants' conduct was willful, intentional, oppressive, malicious, and done with wanton and reckless disregard for HORNOR's rights, thereby warranting the imposition of punitive damages to be determined at trial.

125.    As a result of Defendants' conduct, HORNOR has been required to retain the services of an attorney and, as a direct and foreseeable result, has been damaged and is entitled to reasonable attorney's fees and costs.

### THIRD CLAIM FOR RELIEF

**Retaliation in Violation of Title VII of the 1964 Civil Rights Act,**

**42 U.S.C. § 2000e *et seq.* ("Title VII")**

*HORNOR Against Defendants REFLEX and ROE CORPs*

126.    Plaintiff incorporates and realleges Paragraphs 1 through 125 of this Complaint as though

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy. #241, Henderson, Nevada 89052
Telephone: (702) 383-2864   Facsimile: (702) 383-0065

fully set forth herein.

127.    HORNOR engaged in protected activity on numerous occasions throughout his employment with REFLEX when he complained to his supervisor about and explicitly opposed WEY's discriminatory conduct.

128.    During most of these instances, REFLEX did not have a proper HR department. HORNOR could only bring these complaints to his direct supervisor or REFLEX's in-house counsel.

129.    These complaints were frequently relayed made to WEY, who would then reprimand HORNOR, question his loyalty, and withheld a promotion for months. This conduct constitutes adverse employment actions against HORNOR.

130.    HORNOR engaged in a protected activity by utilizing REFLEX's appropriate internal procedures for reporting discriminatory conduct when he submitted his final correspondence letter to REFLEX on February 8, 2022.

131.    HORNOR's final correspondence letter to REFLEX detailed conduct that constitutes an unlawful employment practice under Title VII, and expressly stated HORNOR's opposition to that conduct.

132.    HORNOR was subsequently terminated from REFLEX.

133.    There is a clear link between HORNOR's protected conduct and the adverse employment action he experienced, as HORNOR's termination occurred mere minutes after HORNOR sent his letter to REFLEX stating his opposition to WEY's conduct.

134.    The conduct as set forth above constitutes violations of Title VII. Defendants, through their agents and employees, unlawfully retaliated against HORNOR because he refused to practice and reported WEY's conduct, as prohibited by Title VII.

135.    At all times relevant to HORNOR's allegations herein, WEY was acting within the course and scope of his employment as CEO of REFLEX.

136.    REFLEX is therefore liable for WEY's discriminatory acts and omissions.

137.    As a direct and proximate result of Defendants' conduct, HORNOR has suffered, and continues to suffer, irreparable injury and monetary damages in the form of past, present, and future lost earnings and other benefits; great emotional distress, bodily harm, pain and suffering;

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

1   and other related damages, some or all of which may be permanent and/or disabling in nature.

2   138.   Defendants' conduct was willful, intentional, oppressive, malicious, and done with wanton

3   and reckless disregard for HORNOR's rights, thereby warranting the imposition of punitive

4   damages to be determined at trial.

5   139.   As a result of Defendants' conduct, HORNOR has been required to retain the services of an

6   attorney and, as a direct and foreseeable result, has been damaged and is entitled to reasonable

7   attorney's fees and costs.

8   <u>**FOURTH CLAIM FOR RELIEF**</u>

9   **Retaliation in Violation of NRS 613.330**

10   *HORNOR Against Defendants REFLEX and ROE CORPS*

11   140.   Plaintiff incorporates and realleges Paragraphs 1 through 139 of this Complaint as though

12   fully set forth herein.

13   141.   HORNOR engaged in protected activity on numerous occasions throughout his

14   employment with REFLEX when he complained to his supervisor about and explicitly opposed

15   WEY's discriminatory conduct.

16   142.   During most of these instances, REFLEX did not have a proper HR department. HORNOR

17   could only bring these complaints to his direct supervisor or REFLEX's in-house counsel.

18   143.   These complaints were frequently relayed made to WEY, who would then reprimand

19   HORNOR, question his loyalty, and withheld a promotion for months. This conduct constitutes

20   adverse employment actions against HORNOR.

21   144.   HORNOR also engaged in a protected activity by utilizing REFLEX's appropriate internal

22   procedures for reporting discriminatory conduct when he submitted his final correspondence letter

23   to REFLEX on February 8, 2022.

24   145.   HORNOR's final correspondence letter to REFLEX detailed conduct that constitutes an

25   unlawful employment practice under NRS 613.340, and expressly stated HORNOR's opposition to

26   that conduct.

27   146.   HORNOR was subsequently terminated from REFLEX.

28   147.   There is a clear link between HORNOR's protected conduct and the adverse employment

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864   Facsimile: (702) 383-0065

action he experienced, as HORNOR's termination occurred mere minutes after HORNOR sent his letter to REFLEX stating his opposition to WEY's conduct.

148.    The conduct as set forth above constitutes violations of NRS 613.340. Defendants, through their agents and employees, unlawfully retaliated against HORNOR because he refused to practice and reported WEY's conduct, as prohibited by NRS 613.340.

149.    At all times relevant to HORNOR's allegations herein, WEY was acting within the course and scope of his employment as CEO of REFLEX.

150.    REFLEX is therefore liable for WEY's discriminatory acts and omissions.

151.    As a direct and proximate result of Defendants' conduct, HORNOR has suffered, and continues to suffer, irreparable injury and monetary damages in the form of past, present, and future lost earnings and other benefits; great emotional distress, bodily harm, pain and suffering; and other related damages, some or all of which may be permanent and/or disabling in nature.

152.    Defendants' conduct was willful, intentional, oppressive, malicious, and done with wanton and reckless disregard for HORNOR's rights, thereby warranting the imposition of punitive damages to be determined at trial.

153.    As a result of Defendants' conduct, HORNOR has been required to retain the services of an attorney and, as a direct and foreseeable result, has been damaged and is entitled to reasonable attorney's fees and costs.

## FIFTH CLAIM FOR RELIEF

**Failure to Accommodate in Violation of Title VII of the 1964 Civil Rights Act,**

**42 U.S.C. § 2000e *et seq.* ("Title VII")**

*HORNOR Against Defendants REFLEX and ROE CORPS*

154.    Plaintiff incorporates and realleges Paragraphs 1 through 153 of this Complaint as though fully set forth herein.

155.    At all relevant times, HORNOR was an agnostic, which constitutes a bona fide religious belief.

156.    This belief conflicted with HORNOR's duties because WEY required and expected that all REFLEX employees to engage in WEY's own belief system.

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864   Facsimile: (702) 383-0065

157.    Employees who failed to do so were questioned, considered disloyal, were at a disadvantage compared to those REFLEX employees who did, and faced a legitimate threat of losing their jobs.

158.    The constant pressure and harassment to engage in WEY's religion caused HORNOR to suffer physical issues, such as severe anxiety and a flare-up of his ulcerative colitis.

159.    WEY's constant scrutiny, coupled with the physical and mental effects that HORNOR experienced, necessarily interfered with HORNOR's ability to perform daily tasks, much less his time and focus-intensive job duties.

160.    Defendants were on notice of HORNOR's opposition to WEY's religious practices and his requests to be excluded from them. HORNOR made complaints and requested accommodations throughout his employment about the religious requirements of his job imposed by WEY.

161.    In response, WEY repeatedly harassed HORNOR to conform with WEY's religious beliefs and practices as a condition of his continued employment.

162.    No good faith efforts were made to accommodate HORNOR. Instead, HORNOR was reprimanded for complaining.

163.    On or about February 8, 2022, HORNOR sent REFLEX a list of accommodations pertaining to the religious practices imposed at REFLEX.

164.    That same day, within mere minutes of sending the list, HORNOR was terminated from REFLEX.

165.    Defendants would have suffered no undue hardship by accommodating HORNOR's requests that he be excluded from WEY's religious practices.

166.    There is a clear link between HORNOR's request for accommodations and the adverse employment action he experienced, as HORNOR's termination occurred minutes after HORNOR sent his letter to REFLEX stating his opposition to WEY's conduct and requesting accommodations.

167.    The conduct as set forth above constitutes violations of Title VII. Defendants, through their agents and employees, unlawfully retaliated against HORNOR because he refused to practice and reported WEY's conduct, as prohibited by Title VII.

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864   Facsimile: (702) 383-0065

168.    At all times relevant to HORNOR's allegations herein, WEY was acting within the course and scope of his employment as CEO of REFLEX.

169.    REFLEX is therefore liable for WEY's discriminatory acts and omissions.

170.    As a direct and proximate result of Defendants' conduct, HORNOR has suffered, and continues to suffer, irreparable injury and monetary damages in the form of past, present, and future lost earnings and other benefits; great emotional distress, bodily harm, pain and suffering; and other related damages, some or all of which may be permanent and/or disabling in nature.

171.    Defendants' conduct was willful, intentional, oppressive, malicious, and done with wanton and reckless disregard for HORNOR's rights, thereby warranting the imposition of punitive damages to be determined at trial.

172.    As a result of Defendants' conduct, HORNOR has been required to retain the services of an attorney and, as a direct and foreseeable result, has been damaged and is entitled to reasonable attorney's fees and costs.

### SIXTH CLAIM FOR RELIEF

**Failure to Accommodate in Violation of NRS 613.330**

*HORNOR Against Defendants REFLEX and ROE CORPS*

173.    Plaintiff incorporates and realleges Paragraphs 1 through 172 of this Complaint as though fully set forth herein.

174.    At all relevant times, HORNOR was an agnostic, which constitutes a bona fide religious belief.

175.    This belief conflicted with HORNOR's duties because WEY required and expected that all REFLEX employees engage in WEY's own belief system.

176.    Employees who failed to do so were questioned, considered disloyal, were at a disadvantage compared to those REFLEX employees who did, and faced a legitimate threat of losing their jobs.

177.    The constant pressure and harassment to engage in WEY's religion caused HORNOR to suffer physical issues, such as severe anxiety and a flare-up of his ulcerative colitis.

178.    WEY's constant scrutiny, coupled with the physical and mental effects that HORNOR

experienced, necessarily interfered with HORNOR's ability to perform daily tasks, much less his time and focus-intensive job duties.

179.    Defendants were on notice of HORNOR's opposition to WEY's religious practices and his requests to be excluded from them. HORNOR made complaints and requested accommodations throughout his employment about the religious requirements of his job imposed by WEY.

180.    In response, WEY repeatedly harassed HORNOR to conform with WEY's religious beliefs and practices as a condition of his continued employment.

181.    No good faith efforts were made to accommodate HORNOR. Instead, HORNOR was reprimanded for complaining.

182.    On or about February 8, 2022, HORNOR sent REFLEX a list of accommodations pertaining to the religious practices imposed at REFLEX.

183.    That same day, within mere minutes of sending the list, HORNOR was terminated from REFLEX.

184.    Defendants would have suffered no undue hardship by accommodating HORNOR's requests that he be excluded from WEY's religious practices.

185.    There is a clear link between HORNOR's request for accommodations and the adverse employment action he experienced, as HORNOR's termination occurred minutes after HORNOR sent his letter to REFLEX stating his opposition to WEY's conduct and requesting accommodations.

186.    The conduct as set forth above constitutes violations of NRS 613.330. Defendants, through their agents and employees, unlawfully retaliated against HORNOR because he refused to practice and reported WEY's conduct, as prohibited by NRS 613.330.

187.    At all times relevant to HORNOR's allegations herein, WEY was acting within the course and scope of his employment as CEO of REFLEX.

188.    REFLEX is therefore liable for WEY's discriminatory acts and omissions.

189.    As a direct and proximate result of Defendants' conduct, HORNOR has suffered, and continues to suffer, irreparable injury and monetary damages in the form of past, present, and future lost earnings and other benefits; great emotional distress, bodily harm, pain and suffering;

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

1    and other related damages, some or all of which may be permanent and/or disabling in nature.

2    190.    Defendants' conduct was willful, intentional, oppressive, malicious, and done with wanton

3    and reckless disregard for HORNOR's rights, thereby warranting the imposition of punitive

4    damages to be determined at trial.

5    191.    As a result of Defendants' conduct, HORNOR has been required to retain the services of an

6    attorney and, as a direct and foreseeable result, has been damaged and is entitled to reasonable

7    attorney's fees and costs.

8    **SEVENTH CLAIM FOR RELIEF**

9    **Hostile Work Environment in Violation of Title VII of the 1964 Civil Rights Act,**

10    **42 U.S.C. § 2000e *et seq.* ("Title VII")**

11    *HORNOR Against Defendants REFLEX and ROE CORPS*

12    192.    Plaintiff incorporates and realleges Paragraphs 1 through 191 of this Complaint as though

13    fully set forth herein.

14    193.    As an agnostic, HORNOR is a member of a class of persons protected by Title VII, which

15    prohibits discriminatory conduct so severe and pervasive as to create a hostile work environment.

16    194.    HORNOR was constantly subjected to unwelcome verbal and physical conduct based on

17    his religious beliefs.

18    195.    Specifically, as alleged herein, WEY coerced HORNOR into adhering to WEY's religion.

19    This included engaging in physical and emotionally distressing conduct such as illegal drug use

20    and sexually explicit discussions during religious workshops that HORNOR was required to

21    attend. HORNOR was forced to routinely share extremely personal traumas and witness coworkers

22    in great emotional distress upon being forced to do the same. WEY also privately questioned

23    HORNOR's commitment to WEY's views and used HORNOR's pending promotion to CPO to

24    coerce him into adhering to his religion throughout 2021.

25    196.    Additionally, WEY gave preferential treatment to those who aligned with his religious

26    views and publicly questioned and reprimanded those who he felt did not. WEY used "aura

27    readings" and one's willingness to take drugs to make employment decisions, causing great

28    anxiety among employees at REFLEX. Further, REFLEX lacked a functioning HR department,

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864   Facsimile: (702) 383-0065

and so HORNOR and other employees lacked recourse to deal with WEY's harassment and were instead reprimanded by WEY for complaining.

197.    These regular occurrences were humiliating and deeply triggering to HORNOR, who has his own history of personal trauma.

198.    The discriminatory conduct was sufficiently severe and pervasive to alter the conditions of HORNOR's employment and create an abusive work environment in violation of Title VII.

199.    The terms and conditions of HORNOR's employment were altered and religious hostility permeated REFLEX's workplace environment, further shown by HORNOR's immediate termination for complaining about WEY's religious practices.

200.    The harassment HORNOR suffered was a direct result of his failure to conform to WEY's religious practices. Employees who conformed were not harassed and received preferential treatment from WEY.

201.    HORNOR subjectively perceived the working environment to be hostile and abusive, as shown by the facts above and the decline in his mental and physical health, for which he sought treatment.

202.    Additionally, a reasonable person would consider HORNOR's work environment to be objectively hostile and/or abusive.

203.    Defendants, knew, or should have known, of the religiously abusive and hostile work environment caused by WEY but took no action to stop or prevent any of the unwanted and inappropriate conduct despite having notice of WEY's behavior and complaints against WEY.

204.    The conduct as set forth above constitutes violations of Title VII. Defendants, through their agents and employees, unlawfully subjected HORNOR to a hostile work environment because he refused to practice WEY's religion and reported WEY's conduct, as prohibited by Title VII.

205.    At all times relevant to HORNOR's allegations herein, WEY was acting within the course and scope of his employment as CEO of REFLEX.

206.    REFLEX is therefore liable for WEY's discriminatory acts and omissions.

207.    As a direct and proximate result of Defendants' conduct, HORNOR has suffered, and continues to suffer, irreparable injury and monetary damages in the form of past, present, and

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy. #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

1   future lost earnings and other benefits; great emotional distress, bodily harm, pain and suffering;

2   and other related damages, some or all of which may be permanent and/or disabling in nature.

3   208.   Defendants' conduct was willful, intentional, oppressive, malicious, and done with wanton

4   and reckless disregard for HORNOR's rights, thereby warranting the imposition of punitive

5   damages to be determined at trial.

6   209.   As a result of Defendants' conduct, HORNOR has been required to retain the services of an

7   attorney and, as a direct and foreseeable result, has been damaged and is entitled to reasonable

8   attorney's fees and costs.

9   **EIGHTH CLAIM FOR RELIEF**

10   **Hostile Work Environment in Violation of NRS 613.330**

11   *HORNOR Against Defendants REFLEX and ROE CORPs*

12   210.   Plaintiff incorporates and realleges Paragraphs 1 through 209 of this Complaint as though

13   fully set forth herein.

14   211.   As an agnostic, HORNOR is a member of a class of persons protected by NRS 613.330,

15   which prohibits discriminatory conduct so severe and pervasive as to create a hostile work

16   environment.

17   212.   HORNOR was constantly subjected to unwelcome verbal and physical conduct based on

18   his religious beliefs.

19   213.   Specifically, as alleged herein, WEY coerced HORNOR into adhering to WEY's religion.

20   This included engaging in physical and emotionally distressing conduct such as illegal drug use

21   and sexually explicit discussions during religious workshops that HORNOR was required to

22   attend. HORNOR was forced to routinely share extremely personal traumas and witness coworkers

23   in great emotional distress upon being forced to do the same. WEY also privately questioned

24   HORNOR's commitment to WEY's views and used HORNOR's pending promotion to CPO to

25   coerce him into adhering to his religion throughout 2021.

26   214.   Additionally, WEY gave preferential treatment to those who aligned with his religious

27   views and publicly questioned and reprimanded those who he felt did not. WEY used "aura

28   readings" and one's willingness to take drugs to make employment decisions, causing great

anxiety among employees at REFLEX. Further, REFLEX lacked a functioning HR department, and so HORNOR and other employees lacked recourse to deal with WEY's harassment and were instead reprimanded by WEY for complaining.

215.    These regular occurrences were humiliating and deeply triggering to HORNOR, who has his own history of personal trauma.

216.    The discriminatory conduct was sufficiently severe and pervasive to alter the conditions of HORNOR's employment and create an abusive work environment in violation of Title VII.

217.    The terms and conditions of HORNOR's employment were altered and religious hostility permeated REFLEX's workplace environment, further shown by HORNOR's immediate termination for complaining about WEY's religious practices.

218.    The harassment HORNOR suffered was a direct result of his failure to conform to WEY's religious practices, as employees who did conform were not harassed and received preferential treatment from WEY.

219.    HORNOR subjectively perceived the working environment to be hostile and/or abusive, as shown by the facts set forth above and the decline in his mental and physical health, for which he sought treatment.

220.    Additionally, a reasonable person would consider HORNOR's work environment to be objectively hostile and/or abusive.

221.    Defendants, knew, or should have known, of the religiously abusive and hostile work environment caused by WEY but took no action to stop or prevent any of the unwanted and inappropriate conduct despite having notice of WEY's behavior and complaints against WEY.

222.    The conduct as set forth above constitutes violations of NRS 613.330. Defendants, through their agents and employees, unlawfully subjected HORNOR to a hostile work environment because he refused to practice WEY's religion and reported WEY's conduct, as prohibited by NRS 613.330.

223.    At all times relevant to HORNOR's allegations herein, WEY was acting within the course and scope of his employment as CEO of REFLEX.

224.    REFLEX is therefore liable for WEY's discriminatory acts and omissions.

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy. #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

225.    As a direct and proximate result of Defendants' conduct, HORNOR has suffered, and continues to suffer, irreparable injury and monetary damages in the form of past, present, and future lost earnings and other benefits; great emotional distress, bodily harm, pain and suffering; and other related damages, some or all of which may be permanent and/or disabling in nature.

226.    Defendants' conduct was willful, intentional, oppressive, malicious, and done with wanton and reckless disregard for HORNOR's rights, thereby warranting the imposition of punitive damages to be determined at trial.

227.    As a result of Defendants' conduct, HORNOR has been required to retain the services of an attorney and, as a direct and foreseeable result, has been damaged and is entitled to reasonable attorney's fees and costs.

## NINTH CLAIM FOR RELIEF

### Tortious Discharge

*HORNOR Against Defendants*

228.    Plaintiff incorporates and realleges Paragraphs 1 through 227 of this Complaint as though fully set forth herein.

229.    Nevada criminalizes the distribution and use of illicit drugs as a matter of public safety.

230.    HORNOR refused to take illicitly distributed amphetamines from Devin Rosewall during work hours.

231.    Rosewall dropped a bag of unidentified orange pills on HORNOR's desk during work hours, identified it as a particularly potent amphetamine, and insisted that he take it over HORNOR's objections. Rosewall told HORNOR that she had distributed it to several other employees and then left.

232.    HORNOR threw the drugs in the trash and reported the incident to Ruben Buell. Buell and HORNOR agreed that HORNOR would reach out to Mark Smith.

233.    Mark Smith agreed that HORNOR's concerns were valid, stated he would talk with WEY, and that Smith would ensure that Rosewall was addressed before returning to the REFLEX premises.

234.    Instead, WEY demanded that HORNOR apologize to Rosewall for reporting the incident

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy. #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

1   and assure her that what she did was okay. HORNOR refused.

2   235.   Immediately after this incident, WEY began calling HORNOR's executive decision-

3   making abilities into question in retaliation.

4   236.   In his January 30, 2022 email to HORNOR preceding HORNOR's termination, WEY

5   again criticized HORNOR for raising an issue with Devin.

6   237.   Additionally, in HORNOR's final letter to REFLEX, HORNOR contested REFLEX's

7   practices with regards to drug use and distribution during office hours. HORNOR was terminated

8   within minutes of sending this letter.

9   238.   HORNOR's refusal to violate the law by using the illicit substances provided to him by

10  Devin Rosewall and for refusing to work under unreasonably dangerous conditions was a

11  substantial factor in his ultimate termination.

12  239.   At all times relevant to HORNOR's allegations herein, WEY was acting within the course

13  and scope of his employment as CEO of REFLEX.

14  240.   REFLEX is therefore liable for WEY's acts and omissions.

15  241.   As a direct and proximate result of Defendants' conduct, HORNOR has suffered, and

16  continues to suffer, irreparable injury and monetary damages in the form of past, present, and

17  future lost earnings and other benefits; great emotional distress, bodily harm, pain and suffering;

18  and other related damages, some or all of which may be permanent and/or disabling in nature.

19  242.   Defendants' conduct was willful, intentional, oppressive, malicious, and done with wanton

20  and reckless disregard for HORNOR's rights, thereby warranting the imposition of punitive

21  damages to be determined at trial.

22  243.   As a result of Defendants' conduct, HORNOR has been required to retain the services of an

23  attorney and, as a direct and foreseeable result, has been damaged and is entitled to reasonable

24  attorney's fees and costs.

25                          **TENTH CLAIM FOR RELIEF**

26                     **Intentional Infliction of Emotional Distress**

27                          *HORNOR Against Defendants*

28  244.   Plaintiff incorporates and realleges Paragraphs 1 through 243 of this Complaint as though

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864   Facsimile: (702) 383-0065

fully set forth herein.

245.    Throughout HORNOR's employment with REFLEX, WEY engaged in extreme and outrageous conduct with reckless disregard for the emotional distress said conduct caused.

246.    As alleged herein, WEY intentionally forced HORNOR, and other REFLEX employees, to endure numerous religious ceremonies involving sexual and inappropriate subjects, to routinely disclose personal traumatic information, to listen to others' traumatic experiences and witness their extreme emotional distress, and to consume drugs as conditions of his employment.

247.    Specific instances of this conduct included, but were certainly not limited to: (1) pushing one employee (Mr. Cole), to the point of a mental breakdown in front of his coworkers and causing legitimate fear of retaliatory workplace violence; (2) requiring employees to listen to WEY's own sexual experiences in great detail; (3) requiring HORNOR and other employees to relive their own trauma by sharing it openly with other employees; and (4) requiring HORNOR to use drugs which had obvious potential to (and did) cause emotional distress and to trigger trauma in order to maintain his position within REFLEX *and* to move upward in the organization.

248.    It was well-known that the consequences of failing to participate in these painful experiences threatened an employee's position within REFLEX. HORNOR and other employees constantly chose between being able to support their families or participating in traumatic experiences which often had serious emotional, physical, and mental consequences.

249.    As a direct result of WEY's extreme and outrageous conduct, HORNOR suffered severe emotional disturbances and experienced extreme physical symptoms of intoxication and withdrawal as a result of being coerced into consuming drugs.

250.    HORNOR was diagnosed with various stress-related disorders and required regular mental health treatment as a direct result of WEY's intentional actions.

251.    Around the time of WEY's January 30, 2022 email, HORNOR began suffering various stress-induced psychological and physical symptoms and ailments aggravated by that stress.

252.    Specifically, as WEY's conduct became more extreme and invasive, HORNOR experienced a severe ulcerative colitis flare-up. Up to that point, HORNOR's condition was well under control.

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy, #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

253.    HORNOR's flare up was so severe that he experienced significant internal bleeding and had to consider intense treatment options such as invasive procedures and chemotherapy. In short, WEY's near constant extreme and outrageous conduct had life or death consequences on HORNOR's health.

254.    HORNOR also experienced severe mental distress as a direct result of both his physical symptoms and WEY's conduct.

255.    HORNOR's symptoms were so severe that he began the process of requesting FMLA leave for his ailments.

256.    WEY's conduct was extreme and outrageous and done with the intention of, or reckless disregard for, causing emotional distress to HORNOR.

257.    At all times relevant to HORNOR's allegations herein, WEY was acting within the course and scope of his employment as CEO of REFLEX.

258.    REFLEX is therefore liable for WEY's discriminatory acts and omissions.

259.    As a direct and proximate result of Defendants' conduct, HORNOR has suffered, and continues to suffer, irreparable injury and monetary damages in the form of past, present, and future lost earnings and other benefits; great emotional distress, bodily harm, pain and suffering; and other related damages, some or all of which may be permanent and/or disabling in nature.

260.    Defendants' conduct was willful, intentional, oppressive, malicious, and done with wanton and reckless disregard for HORNOR's rights, thereby warranting the imposition of punitive damages to be determined at trial.

261.    As a result of Defendants' conduct, HORNOR has been required to retain the services of an attorney and, as a direct and foreseeable result, has been damaged and is entitled to reasonable attorney's fees and costs.

**ELEVENTH CLAIM FOR RELIEF**

**Intrusion upon Seclusion – Invasion of Privacy**

*HORNOR Against Defendants*

262.    Plaintiff incorporates and realleges Paragraphs 1 through 261 of this Complaint as though fully set forth herein.

263.    HORNOR had a reasonable expectation to keep deeply personal matters private from his employer, and that being required to disclose such matters would not be a condition of his employment.

264.    WEY intentionally intruded upon HORNOR's solitude and seclusion by constantly prying into HORNOR's personal matters as a condition of his employment.

265.    Specifically, as alleged herein, WEY constantly pressured HORNOR in public settings within REFLEX to share deeply private and personal matters such as lifelong and childhood traumas, romantic relationships, sexual experiences, and personal challenges. WEY also held one-on-one meetings with HORNOR and sent HORNOR private emails and texts pressuring HORNOR to disclose highly personal information. WEY also pressured HORNOR to disclose the mental health treatment he was seeking, a highly personal matter.

266.    Failure to share these things resulted in WEY openly questioning an employee's loyalty and being treated less favorably than those who did. WEY referred to this hesitancy as a failure to get on REFLEX's "culture train."

267.    Specifically in regard to HORNOR, WEY constantly held his pending promotion over his head as a way to make him adhere to WEY's religious practices.

268.    HORNOR and all employees were also required to discuss personal matters during ceremonies they were required to attend as a condition of employment. Based on information and belief, WEY typically recorded these ceremonies and distributed the recordings both inside REFLEX and outside the company, despite serious privacy concerns communicated by HORNOR and other recorded employees. HORNOR had a reasonable expectation that such recordings containing his private matters would not be shared with others, especially outside of REFLEX.

269.    The information HORNOR shared was not readily available or perceivable, but WEY pressured HORNOR's private disclosures as a condition of his employment.

270.    WEY's conduct was intentional and done with the motive of intruding into HORNOR's personal affairs and coercing HORNOR into his religion.

271.    WEY's intrusion into his employees' deeply personal experiences and traumas would be highly offensive to any reasonable person.

272.    At all times relevant to HORNOR's allegations herein, WEY was acting within the course and scope of his employment as CEO of REFLEX.

273.    REFLEX is therefore liable for WEY's discriminatory acts and omissions.

274.    As a direct and proximate result of Defendants' conduct, HORNOR has suffered, and continues to suffer, irreparable injury and monetary damages in the form of past, present, and future lost earnings and other benefits; great emotional distress, bodily harm, pain and suffering; and other related damages, some or all of which may be permanent and/or disabling in nature.

275.    Defendants' conduct was willful, intentional, oppressive, malicious, and done with wanton and reckless disregard for HORNOR's rights, thereby warranting the imposition of punitive damages to be determined at trial.

276.    As a result of Defendants' conduct, HORNOR has been required to retain the services of an attorney and, as a direct and foreseeable result, has been damaged and is entitled to reasonable attorney's fees and costs.

## TWELFTH CLAIM FOR RELIEF

### FMLA Interference

*HORNOR Against Defendants*

277.    Plaintiff incorporates and realleges Paragraphs 1 through 276 of this Complaint as though fully set forth herein.

278.    In late January or early February of 2022, Plaintiff notified Defendants that he intended to seek short term disability and exercise FMLA leave by and through REFLEX's agent, Latasha Davis.

279.    Davis informed Plaintiff on Thursday, February 3, 2022, that Plaintiff had access to FMLS and short-term disability.

280.    On Friday, February 4, 2022, Davis asked Plaintiff how much time he would need. Plaintiff told Davis he would likely need two or three weeks, but that he needed to speak with his healthcare provider first.

281.    Davis asked Plaintiff for more information regarding his FMLA leave on or about February 7, 2022, via email. Plaintiff did not see this email until after business hours and intended to

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

LAGOMARSINO LAW

3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

respond the next morning.

282.    Plaintiff was unable to respond to Davis because he was terminated on February 8, 2022.

283.    Plaintiff was actively communicating with REFLEX, by and through Latasha Davis, regarding his FMLA leave. The only reason that Plaintiff did not respond to Davis's request for more information was because Defendants terminated him before he had a chance to respond.

284.    Plaintiff was actually suffering physical and mental health issues (exacerbation of ulcerative colitis, major depression) as a result of Defendants' mistreatment. Defendants were covered employers under the FMLA. Plaintiff was a covered employee. Plaintiff was entitled to take FMLA leave because his health issues were covered under the FMLA.

285.    Within a short time of being notified by Plaintiff of his intention to seek FMLA leave and short-term disability protection, Defendants terminated Plaintiff. Plaintiff's intention and concrete actions toward taking FMLA leave constituted a negative factor in Defendants' decision to terminate him.

286.    Defendants knew that Plaintiff was seeking FMLA leave to tend to physical and mental issues he was experiencing as a direct result of WEY's unlawful conduct and the hostile work environment that he had created. Having record of this precursor to Plaintiff's FMLA leave would have been detrimental to Defendants.

287.    Defendants' conduct, as set forth above, constitutes interference with Plaintiff's exercise of his FMLA rights by, among other things, failing or refusing to properly allow Plaintiff to exercise his rights under the FMLA, subjecting Plaintiff to an adverse employment action, termination, because of his exercise of FMLA rights, and harassing and intimidating Plaintiff for making use of FMLA rights.

288.    As a direct and proximate result of Defendants' conduct, Plaintiff is now suffering, and will continue to suffer, irreparable injury and monetary damages in the form of past, present, and future lost earnings and other employment benefits (including front pay and back pay) in an amount to be determined at trial.

289.    Plaintiff is also entitled to liquidated damages as a result of Defendants' conduct.

290.    Defendants' conduct was willful, intentional, oppressive, malicious, and done with a

wanton and reckless disregard for the rights of Plaintiff. Defendants knew and/or showed reckless disregard for whether their conduct violated the law.

291.    As a result of Defendants' conduct, Plaintiff has been required to retain the services of an attorney and, as a direct and foreseeable result has been damaged thereby and is entitled to reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for a judgment in favor of Plaintiff and against Defendants as follows:

1.    For monetary damages for past, present, and future lost earnings;

2.    For monetary damages for related past, present, and future medical treatment;

3.    For monetary damages for past, present, and future pain and suffering; and other losses associated with such embarrassment, humiliation, and mental and emotional pain;

4.    For punitive damages in an amount to be determined by this Court;

5.    For pre-judgment interest, at the highest rate allowable by law;

6.    For reasonable attorney fees and costs of suit; and

7.    For any such further relief this Court deems appropriate.

DATED this 30th day of November 2022.

LAGOMARSINO LAW

ANDRE M. LAGOMARSINO, ESQ. (#6711)
TAYLOR N. JORGENSEN, ESQ. (#16259)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
*Attorneys for Plaintiff Justyn Hornor*

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

**JURY DEMAND**

PLEASE TAKE NOTICE that Plaintiff, by and through his undersigned attorneys, hereby demands a jury trial of all issues in the above-referenced matter.

DATED this 30th day of November 2022.

LAGOMARSINO LAW

_____
ANDRE M. LAGOMARSINO, ESQ. (#6711)
TAYLOR N. JORGENSEN, ESQ. (#16259)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
*Attorneys for Plaintiff Justyn Hornor*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that on this 30th day of November, 2022, I served a

true and correct copy of the foregoing **PLAINTIFF'S FIRST AMENDED COMPLAINT AND**

**JURY DEMAND** on all parties to this action, electronically and via U.S. mail, to the following:

Mark L. Smith, Esq. (#14762)
Jacob L. Fonnesbeck, Esq. (#11961)
SF FIRM, LLP
6345 S. Pecos Road, Suite 202
Las Vegas, Nevada 89120
Telephone: (725) 666-8701
*Attorneys for Defendants Brandon Wade*
*and Reflex Media, Inc.*


_____
An Employee of **LAGOMARSINO LAW**

LAGOMARSINO LAW
3005 W. Horizon Ridge Pkwy., #241, Henderson, Nevada 89052
Telephone: (702) 383-2864    Facsimile: (702) 383-0065

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28